**Jack H. ABBOTT, Appellant,**

v.

**Joseph S. PETROVSKY, Warden of the United States Medical Center for Federal Prisoners, Norman Carlson, Director of Federal Bureau of Prisons, et al, Appellees.**

No. 83–1571.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 16, 1983.
Decided Sept. 23, 1983.

Raymond C. Conrad, Jr., Federal Public Defender, W.D. Mo., Gregory K. Johnson, Asst. Federal Public Defender, Springfield, Mo., for appellant.

Robert G. Ulrich, U.S. Atty., Michael A. Jones, Asst. U.S. Atty., Springfield, Mo., for appellees; Bill Burlington, Atty. Advisor, U.S. Medical Center for Federal Prisoners, Springfield, Mo., of counsel.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

PER CURIAM.

Appellant Jack H. Abbott filed this lawsuit in an attempt to prevent his transfer from the Medical Center for Federal Pris-

oners at Springfield, Missouri, to the federal prison at Marion, Illinois. He also sought to force the government to place him in the federal witness protection program. An extensive hearing was held before a magistrate, who recommended that the complaint be dismissed. The district court[1] followed the magistrate's recommendation, and Abbott appeals. We affirm.

Abbott is well known as a government informant. In 1980, when he was incarcerated at Marion, he gave a deposition to an Assistant United States Attorney detailing illegal inmate activities. This deposition was later made public, and Abbott was questioned about it on national television. Abbott has also received extensive publicity as the author of a book criticizing the American prison system, and as a result of his parole and subsequent conviction for manslaughter. Abbott has been a plaintiff in a number of civil rights lawsuits.

Abbott contends that as a result of the extensive publicity surrounding his activities as an informant, he is a prime target for murder at Marion. He also claims that as a result of his lawsuits and his criticism of prison guards, the guards at Marion are likely to injure him. Abbott claims that such a transfer would violate the eighth amendment's proscription against cruel and unusual punishment.

The government concedes that Abbott is a special security risk. The government decided that Abbott would be safest at the "K-Unit" at Marion. The security in the K-Unit is higher than that at any unit at any other federal prison. Abbott will be totally segregated from other inmates, and his cell can only be opened from another part of the prison. The government asserts that the Marion K-Unit will provide Abbott the maximum protection available.

■ In order to show an eighth amendment violation, Abbott must demonstrate that the decision to transfer him was made with deliberate indifference to the possibility of violent attacks by inmates or guards.

*Branchcomb v. Brewer,* 669 F.2d 1297, 1298 (8th Cir.1982). A review of the record shows that the prison officials involved have recognized Abbott's special security needs, given extensive thought to where Abbott would be safest, and prepared a special cell for him to protect him from attacks from prison guards. Alternatives are limited, and Abbott himself has conceded that, even with a name change, he would be recognizable in any prison in the country because of the extensive publicity. In view of the difficulties involved in keeping Abbott safe from harm, we cannot say that the decision by the Bureau of Prisons is unreasonable.

We are not indifferent to Abbott's claims that Marion poses special dangers for him. At this point, however, we cannot say that his incarceration at Marion is cruel and unusual punishment. If future developments demonstrate that Abbott is not adequately protected at Marion, or if better alternatives become available, prison officials should reevaluate his situation. *See Walker v. Lockhart,* 713 F.2d 1378 (8th Cir. 1983).

Abbott claims that he should be placed in the Federal Witness Protection Program. After his deposition in 1980, Abbott claims that the Assistant United States Attorney who took the deposition promised Abbott "full witness protection." Abbott does not claim that he was specifically promised protection under the Witness Protection Program; he argues that that program is the best way to provide the protection that was offered. He also alleges that the Assistant United States Attorney released the deposition and thus is responsible for most of the publicity about Abbott as an informant; Abbott argues that the government is thus obligated to protect him from the consequences of the government's actions.

■ The Witness Protection Program is authorized by statute, and allows the Attorney General, in his discretion, to protect

---

1. The Honorable William R. Collinson, United States Senior District Judge, Western District · of Missouri.

government witnesses. Pub.L. 91–452, Title V, §§ 501 *et seq.,* 84 Stat. 933 (1970), *reprinted in* 18 U.S.C. prec. § 3481 (Supp. 1983). Whether or not a witness will be protected under the program is entirely within the Attorney General's discretion. *Doe v. Civiletti,* 635 F.2d 88, 96 (2d Cir. 1980). "One cannot receive protection simply on demand." *Garcia v. United States,* 666 F.2d 960, 962 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982); *see Bergmann v. United States,* 689 F.2d 789, 792–94 (8th Cir.1982).

 Further, the district court expressly found that the primary protection offered by the Witness Protection Program—a new identity—would be insufficient to protect Abbott. Finally, the government's current plans to incarcerate Abbott at the K-Unit, as discussed above, do appear at this time adequate to protect Abbott.

The district court's findings of fact are not clearly erroneous, and there is no misapplication of the law. The judgment of the district court is affirmed.